[Civ. No. 498.   Fifth Dist.   May 12, 1965.]

ROSE LUCILLE HOXSIE, Plaintiff and Appellant, v. NAOMI CLARK, as Executrix, etc., Defendant and Respondent.

---

William P. Webb for Plaintiff and Appellant.

Howard S. Block for Defendant and Respondent.

BROWN (R.M.), J.—The appellant appeals from an adverse judgment rendered against her in an action brought against the respondent, Naomi Clark, as executrix of the will of Rena Pearl Wheeler, deceased, to recover $26,500.

Appellant's father, George L. Wagner, died in 1907, and by a judicial decree, a 10-acre parcel of land which was the father's separate property was set apart as a probate homestead to plaintiff and the decedent, her mother. The appellant and the decedent also inherited 30 acres apiece.

In 1926 the appellant married and moved away from the property but the decedent having remarried, remained on the property until it was sold. She managed the property, controlled the same, paid the taxes and encumbrances thereon, and derived the income therefrom. In 1938 the decedent built a home on this property.

Being in financial straits, the decedent decided to refinance the property and to make this possible the appellant conveyed

her interest in the property to the decedent by a gift deed in 1934. At the time of the transfer the appellant testified that her mother had said: ''The homestead would be put back on. It would be fixed so that it would be the same as before,'' and ''We would be protected right away, as soon as the loan went through; that her lawyer, Mr. Hines, would take care of it.''

In 1956 the decedent sold this 10-acre parcel, together with an adjacent 10-acre parcel, for a gross sales price of $105,000. It was estimated that the house that the decedent had placed on the property was worth from $10,000 to $12,000. Appellant learned of this sale of the property in November or December of 1956. Apparently, in the belief that the decedent had retransferred to appellant her interest in the property, the appellant wrote her mother in 1956 and 1957 to inquire how the property could have been sold without appellant's permission. She received no answer, and it was not until 1959 when the decedent had a heart attack that appellant personally visited the decedent, at which time the decedent is reported to have stated, ''You don't need to worry about that, you are taken care of in my will. You trust your mother, don't you, then she started to cry.'' The decedent also told appellant's husband that, ''Rose was taken care of in a will.'' In 1957 contact was made by the appellant's daughter, at which time the decedent said that ''mother was taken care of in her will and had nothing to worry about,'' and on a later visit in 1961 the daughter was told, ''I don't care to discuss it any further.'' Another daughter confirmed this same conversation with the first daughter.

The decedent died in 1962 and her will specifically disinherited appellant. Thereupon, appellant filed a creditor's claim against the estate for $37,500 for one-half interest in the 10-acre parcel. In due time the claim was rejected. Appellant then brought this suit and amended her demand down to $26,250 at the trial.

The theory upon which this suit is founded is not clear from the complaint on file. The first cause of action specifically alleged all of the facts above stated and a reasonable value of appellant's interest in the property, while the second count was for money had and received. No constructive trust is specifically alleged nor is any relief upon the same prayed for.

After the appellant had put on her case the respondent moved for a nonsuit, which was denied. At this time the trial court stated that it had some difficulty in following the legal theory on which this action was based, and appellant's attor-

ney stated: "It is the theory of Plaintiff that the Decedent held the proceeds of the sale to the extent of one half interest therein as constructive trustee. Of course, this is not the basis upon which the recovery is now sought."

The briefs of appellant do not clarify the matter now before us. Her appeal is devoted primarily to the question of application of the statute of frauds, to constructive trust cases, and to the application of the statute of limitations.

Respondent properly complains that the case was not tried on the theory of constructive trust and that the appellant should not now be permitted to change her theory in the appellate court. We note in the appellant's closing brief this statement: "Our action is for money and is based on an oral promise to pay by decedent's will. This promise is barred by the statute of limitations [frauds?], which requires the same to be in writing (C.C.P. 1973(6); Civ. Code 1624 (6)). However, the courts have consistently applied the doctrine of estoppel to assert the statute of frauds to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances."

Thus, the appellant's claim is one for money from the estate, and does not refer to any specific property upon which the trust, if any were considered, should be imposed. (See *Burke* v. *Maguire,* 154 Cal. 456, 469 [98 P. 21].)

In its findings the trial court adopted the unfortunate method of incorporating by reference different paragraphs of the complaint, finding them either "true" or "not true." Among these findings, the court did find that the misrepresentation by the decedent at or immediately prior to obtaining the gift deed was true, but made in 1934; and that the appellant made such conveyance based on such representation. It also found that the decedent failed to reconvey the property, that the decedent sold the same without asking or receiving permission and that the appellant became aware of the completed sale in December 1956. The court also found that the decedent made no provision for the benefit of the appellant in her will, but did find that there was nothing owed to the appellant.

The court failed to make any findings on the affirmative defenses of laches, statute of limitations, and statute of frauds, as set forth in the respondent's answer.

As to the constructive trust theory, the trial court stated in a minute order: "Although plaintiff might have based her claim upon the theory of resulting or constructive trust, she

has abandoned her right to assert any interest in the specific property or its proceeds. In lieu thereof she has elected to proceed upon causes of action against the estate for (a) breach of agreement to bequeath in accord with alleged oral promises, and (b) assumpsit.''

In its minute order made immediately after the trial, the court succinctly stated how it arrived at its decision, as follows: ''The vague and indefinite promises and assurances of decedent that she would 'take care' of plaintiff in her will, are too uncertain to sustain the claim and complaint of plaintiff.''

In examining the record it appears that the trial court did not reach the affirmative defenses of the statute of limitations and the statute of frauds; although the findings are not crystal clear when read in the light of the prior statements made by the court during the trial and the minute orders, it seems that the judge based his determination on the premise that the appellant had not made out a case.

Here, the appellant does not charge as error any finding made or finding lacking, nor does she maintain that the evidence is insufficient to support the findings. She answers affirmative defenses pleaded in the answer on which no finding was made by the court, just as though the court rested its decision on those defenses, which it clearly did not.

It is argued that there are two agreements, inherently tied together, the second one brought on by the failure of the decedent to fulfill her promise under the first to reconvey the property to her daughter, and the false representation that she had done this. When the decedent's conduct was brought to light, such brought forth the second agreement wherein she promised and agreed to pay her daughter her share by her will. The appellant, improperly, we believe, translates the decedent's language as hereinabove reported as definite promises and agreements to pay the appellant her share of the proceeds of the sale by will.

■ The respondent correctly contends that the appellant's remedy is barred by the statute of limitations. The trial court found that the promise to convey was made in October 1934 and that the appellant first learned that the property had not been reconveyed in December 1956. A constructive trust action based on the failure to reconvey could have been then brought, though none was.

■ The cause of action on the first agreement being barred, the appellant then seeks to enforce a second promise that the decedent ''took care'' of appellant in her will. How-

ever, the second alleged promise, even if found to be true, is very vague and indefinite and therefore unenforceable. ▉ The indefinite promise would not be effective to extend the first promise beyond December 1959. The second alleged promise was in different terms than the original promise to reconvey, and this action must then be said to be brought upon a substitute promise. ▉ In *Rodgers* v. *Byers,* 127 Cal. 528, 531 [60 P. 42], the court discusses three types of promises in a comparable situation to this, and said that such promises to pay ''as soon as I can get the money,'' ''as soon as I can get it,'' will pay ''as soon as I can, but can't now,'' are not equal substituted promises. The court further said (p. 530):

''But, upon the other hand, in the case of a new promise, made while the original obligation is legally enforceable, if that promise be not a general promise to pay the obligation according to its tenor and terms, but is a promise coupled with any condition, and an action is brought after the statute of limitations would have barred the remedy upon the original obligation, the action of plaintiff is then upon the substituted, conditional promise, and not upon the original obligation. Such substituted, conditional promise must be pleaded, the breach of it averred, and the recovery had after such showing.''

And at pages 531-532 it was said: ''Plaintiff's action, as established, then, was an action upon a conditional promise made before the statute of limitations had barred the original obligation, with suit brought after the bar of the statute. The promise being a conditional promise, plaintiff's action was not upon the original obligation under the theory that the contract was a continuing contract, but should have been as laid down in *Curtis* v. *Sacramento, supra* [70 Cal. 412 (11 P. 748)], an action for the breach of the conditional promise, in which it would have been necessary for the plaintiff to allege the promise and show the condition broken after defendant's ability to perform. It follows that the variance between the allegations and proofs in this case is fatal to plaintiff's recovery, for plaintiff, having declared upon one promise, cannot recover upon proof of another and different promise.''

A mere conditional contract constitutes an independent cause of action and does not continue the cause of action on the original obligation. (See *Morehouse* v. *Morehouse,* 140 Cal. 88, 92 [73 P. 738]—overruled on another point in *Tabata* v. *Murane,* 24 Cal.2d 221, 231 [148 P.2d 605].)

The fact that the decedent by her own efforts had saved

this property from foreclosure in 1934 by obtaining a new loan, that she had been in possession of it all this time, and that the decedent had improved the property by constructing a house thereon would require speculation and conjecture to specifically enforce the alleged promise that the decedent had taken care of appellant by will.

An action upon an express or resulting trust must be brought within the period of the statute of limitations. (See *Laing* v. *Laubach*, 233 Cal.App.2d 511, 518 [43 Cal.Rptr. 537]; *Scott* v. *Symons*, 191 Cal. 441 [216 P. 604]; *Broder* v. *Conklin*, 77 Cal. 330 [19 P. 513].)

A definite and certain promise is a strict requirement in an action in equity to enforce an oral agreement to make a will. (*Shive* v. *Barrow*, 88 Cal.App.2d 838, 847-848 [199 P.2d 693].)

It would seem to be impossible to specifically enforce such a promise as herein alleged to have been made by the decedent that the appellant was "taken care of" in her will. In *Monsen* v. *Monsen*, 174 Cal. 97, 98-99 [162 P. 90], it is said: "While the cases which we have cited declare the propriety of an enforcement, in equity, of contracts to make a particular disposition of property upon the death of the promisor, they all agree that enforcement will not be decreed except upon the conditions applicable to all demands for specific performance. One of these is that the terms of the agreement must be definite and certain. Section 3390 of the Civil Code, in enumerating the obligations which cannot be specifically enforced, concludes: '(6) An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable.' In *Owens* v. *McNally* [113 Cal. 444 (45 P. 710, 33 L.R.A. 369)], the court used this language: 'Where a contract such as this, resting in parol and sought to be enforced after the death of the other party to it, comes before a court of equity for review, it is scrutinized, and should be scrutinized, with particular care, and only upon a satisfactory showing that it is definite and certain and just will it be enforced. The proofs of the contract should be clear, and the acts of the claimant referable alone to the contract.' "

We feel that the evidence was sufficient to support the findings of the trial court and it was unnecessary for it to make any findings on the statute of limitations, the statute of frauds, or any other defenses.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.